# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| SORIN PAUL MICLEA, individually<br>ANCA MICLEA a/k/a, ANCA<br>MOLDOVAN, individually, | ) ) ) ) | RECEIVED COPY JUNE 16,2008<br>    08CV 3456<br>    JUDGE ANDERSEN<br>    MAGISTRATE JUDGE ASHMAN |
| Plaintiffs, | ) ) ) | NF |
| v. | ) ) | CASE NO.: |
| CHASE BANKCARD SERVICES, INC. a<br>corporation transacting business in Illinois;<br>VISA U.S.A. INC., a corporation transacting<br>business in Illinois; WYNDHAM<br>CHICAGO, a corporation transacting<br>business in Illinois, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**FILED**

**JUNE 17, 2008**

**HP**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

PLAINTIFFS, SORIN PAUL MICLEA, individually, (hereinafter referred to as "MICLEA"), and ANCA MICLEA a/k/a ANCA MOLDOVAN, (hereafter referred to as "ANCA", and the plaintiffs collectively referred to as "THE MICLEAS") by and through their attorneys, LAW OFFICES OF IOANA SALAJANU and MURRAY, JENSEN & WILSON, LTD., complain against Defendants, CHASE BANKCARD SERVICES, INC., a corporation transacting business in Illinois, (hereinafter referred to as "CHASE"), VISA U.S.A. INC., a corporation transacting business in Illinois (hereinafter referred to as "VISA"), WYNDHAM CHICAGO, a corporation transacting business in Illinois (hereinafter referred to as "WYNDHAM") as follows:

## I.    THE PARTIES.

1.      MICLEA is a resident of Cook County, Illinois and, at all times relevant, was a general manager of Universal Soccer Association Corp., an Illinois corporation, (herein referred to as "UNIVERSAL").

2.      UNIVERSAL was engaged in promoting soccer matches in the United States of America and on an international level.

3.      ANCA is the wife of MICLEA, and is a resident of Cook County, Illinois.

4.      CHASE is an entity doing business in Illinois.

5.      VISA is an entity transacting business in Illinois.

6.      WYNDHAM is an entity transacting business in Illinois.


## II.    JURISDICTION AND VENUE.

7.      This Court has subject matter jurisdiction under 28 U.S.C.A. §1331 and 28 U.S.C.A. § 1367.

8.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C.A. §1391(a) because a substantial portion of the acts or omissions giving rise to this claim occurred in this District.


## III.    COMMON FACTUAL ALLEGATIONS.

9.      VISA and CHASE jointly transacted to provide personal credit card services to THE MICLEAS.

10.     On or about April 21, 2006, THE MICLEAS were joint holders of a personal Chase Visa card account with the credit card number ending in xxxx xxxx xxx0846 (hereinafter

referred to as "CARD"), [the entire card number redacted for security reasons]. *See* a true and accurate, but partially redacted, copy of the CARD attached hereto as Exhibit A.

11. The MICLEAS' CARD activity was relatively minimal in nature and was not used for large transactions.

12. On or about April 2006, UNIVERSAL organized and promoted four friendly soccer matches that were played in the United States of America, which included the soccer federations of Romania, Northern Ireland, Uruguay and Columbia (hereinafter referred to as "GAMES").

13. MICLEA managed the administrative aspects of the GAMES.

14. On or about April 17, 2006, UNIVERSAL executed a Hotel Group Event Agreement, (hereinafter referred to as "AGREEMENT") with WYNDHAM, whereby WYNDHAM would provide room and board to the participants of the GAMES from May 24, 2006 - May 29, 2006. *See* a true and accurate copy of the Agreement attached hereto as Exhibit B.

15. On or about April 21, 2006, MICLEA executed a Credit Card Authorization Form, (hereinafter referred to as "AUTHORIZATION") with WYNDHAM. *See* a true and accurate copy of the Authorization attached hereto as Exhibit C.

16. The AUTHORIZATION authorized WYNDHAM to charge the MICLEA'S personal CARD the amount of Twenty Thousand Dollars and Zero Cents ($20,000.00), as a down payment for the hotel rooms relating to the GAMES.

17. Following the termination of the GAMES, WYNDHAM provided UNIVERSAL with an invoice for an outstanding balance due from UNIVERSAL to WYNDHAM related to the GAMES.

18.    UNIVERSAL did not agree with the invoice and contacted WYNDHAM on numerous occasions to discuss the invoice and why the invoice was in contravention of the AGREEMENT.

19.    UNIVERSAL offered to pay only the amount due pursuant to the terms and conditions of the AGREEMENT.

20.    WYNDHAM repeatedly ignored UNIVERSAL'S communications.

21.    On or about July 21, 2007, WYNDHAM charged THE MICLEAS' personal CARD the additional sum of Forty-Six Thousand Two Hundred Ten Dollars and Zero Cents ($46,210.00).

22.    WYNDHAM charged said amount without THE MICLEAS' knowledge, nor authorization.

23.    On or about August 2006, THE MICLEAS discovered the Forty-Six Thousand Two Hundred Ten Dollars and Zero Cents ($46,210.00) charge to the CARD upon receiving a statement from CHASE.

24.    The charge was in contravention of the AUTHORIZATION's terms and conditions.

25.    UNIVERSAL and THE MICLEAS contacted WYNDHAM regarding the Forty-Six Thousand Two Hundred Ten Dollars and Zero Center ($46,210.00) charge.

26.    WYNDHAM repeatedly ignored any and all communications from THE MICLEAS and/or UNIVERSAL regarding the charge to the personal CARD in the sum of Forty-Six Thousand Two Hundred Ten Dollars and Zero Center ($46,210.00).

27.    CHASE and VISA permitted the transaction and charged THE MICLEAS' account the sum of Forty-Six Thousand Two Hundred Ten Dollars and Zero Cents ($46,210.00), which amount exceeded the maximum credit limit on the account.

28.    Neither CHASE nor VISA notified THE MICLEAS of this charge.

29.    Neither CHASE nor VISA contacted THE MICLEAS to verify whether the CARD charge was authorized or valid.

30.    On or about September 27, 2006, THE MICLEAS provided written notice to CHASE informing it of the billing error in the amount of Forty-Six Thousand Two Hundred Ten Dollars and Zero Cents ($46,210.00). *See* a true and accurate copy of such correspondence attached hereto as Exhibit D.

31.    On or about October 12, 2006, THE MICLEAS submitted a second dispute request relating to the Forty-Six Thousand Two Hundred Ten Dollars and Zero Cents ($46,210.00). *See* a true and accurate copy of such correspondence attached hereto as Exhibit E.

32.    On March 2, 2007, over five months after the initial dispute claim forwarded by THE MICLEAS, CHASE responded and asserted that the charge, Forty-Six Thousand Two Hundred Ten Dollars and Zero Center ($46,210.00), is valid. *See* a true and accurate copy of such correspondence attached hereto as Exhibit F.

33.    THE MICLEAS informed CHASE that CHASE never communicated with THE MICLEAS to verify the position of THE MICLEAS or the accuracy of WYNDHAM'S position relating to the charge, prior to denying THE MICLEAS' claim dispute.

34.    THE MICLEAS informed CHASE that there was a dispute with WYNDHAM as to the accuracy of the bill that WYNDHAM forwarded to UNIVERSAL, and that the bill did not conform to the terms and conditions of the AGREEMENT.

35.    THE MICLEAS' counsel communicated with CHASE regarding the additional charge of Forty-Six Thousand Two Hundred Ten Dollars and Zero Cents ($46,210.00), and requested a copy of the terms of the credit agreement for the CARD.

36.    CHASE has failed to provide THE MICLEAS, or their counsel, with the terms and agreement of their CARD.

37.    As a result of the additional charge of Forty-Six Thousand Two Hundred Ten Dollars and Zero Cents ($46,210.00), THE MICLEAS, inter alia, (a) incurred finance charges; (b) over the limit charges; (c) an increase in the CARD'S interest rate to 16.40%; (d) a minimum monthly payment amount of at least Forty-Four Thousand Dollars and Zero Center ($44,000.00) per month, and (e) derogatory statements on their credit reports negatively and adversely affecting their credit rating.

IV.    **COUNT I – VIOLATION OF 15 USCA § 1643 – AGAINST CHASE AND VISA.**

1-37.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 37 of the Common Factual Allegations as paragraphs 1-37 of this Count I, as through fully set forth herein.

38.    THE MICLEAS authorized Twenty-Thousand Dollars and Zero Cents ($20,000.00) as a transaction on the CARD.

39.    The AUTHORIZATION executed by MICLEA did not permit WYNDHAM to charge the CARD the sum of Forty-Six Thousand Two Hundred Ten Dollars and Zero Cents ($46,210.00) on the CARD.

40.    The AUTHORIZATION was specific that only in the event that there were

outstanding balances left unpaid after issuance of the final bill, would MICLEA authorize

WYNDHAM to bill the CARD any unpaid amounts.

41. The AUTHORIZATION required WYNDHAM to issue a final bill per the terms

and conditions of the AGREEMENT.

42. WYNDHAM failed to issue a bill per the terms and conditions of the

AGREEMENT.

43. UNIVERSAL was always willing and able to pay the bill per the AGREEMENT

but UNIVERSAL was ignored by WYNDHAM.

44. UNIVERSAL made no payment of the final bill because there was no valid bill

forwarded to UNIVERSAL.

45. WYNDHAM should not have charged the CARD an amount in excess of the

authorized Twenty Thousand Dollars ($20,000.00).

46. As such, WYNDHAM, per the terms of its own AUTHORIZATION, did not

have authorization to charge the CARD the sum of Forty-Six Thousand Two Hundred Ten

Dollars and Zero Cents ($46,210.00).

47. CHASE failed to communicate with THE MICLEAS regarding the charge.

48. THE MICLEAS are not responsible for a liability incurred from an unauthorized

use of the CARD.

49. 15 U.S.C.A. § 1643 (d) states that a "cardholder incurs no liability from the

unauthorized use of a credit card." *See* 15 U.S.C.A. § 1643 (d).

50. THE MICLEAS were not notified of the circumstances of the unauthorized

transaction by either CHASE or VISA. *See* 15 U.S.C.A. § 1643 (1)(e).

51.    CHASE and or VISA failed to give THE MICLEAS any notice of the potential liability.  *See* 15 U.S.C.A. § 1643 (1)(c).

WHEREAS, Plaintiffs, SORIN PAUL MICLEA and ANCA MICLEA a/k/a ANCA MOLDOVAN hereby request that this Court enter an order as follows:

A.    That CHASE BANK USA, N.A. and VISA, INC., immediately reverse the charge of Forty-Six Thousand Two Hundred dollars and Zero Cents ($46,210.00) to the CARD;

B.    Communicate with all credit reporting agencies to remove any and all derogatory statements relating to the CARD on THE MICLEAS' credit reports;

C.    Reimburse any expenses incurred by THE MICLEAS relating to the CARD, including but not limited to finance charges, over the limit fees, fees, costs and attorney's fees relating to the excess charge by CHASE BANK USA, N.A., and VISA, INC. to THE MICLEAS CARD; and,

D.    Any other relief that this Court sees fit.


## VI.    COUNT II – VIOLATION OF 15 U.S.C.A. § 1666 FAIR CREDIT BILLING ACT.

1-51.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 51 of Count I as paragraphs 1-51 of this Count II, as fully set forth herein.

52.    On or about August 2006, THE MICLEAS discovered the Forty-Six Thousand Two Hundred dollars and Zero Cents ($46,210.00) charge on the CARD.

53.    On or about September 27, 2006, THE MICLEAS provided written notice to

CHASE informing of a billing error in the amount of Forty-Six Thousand Two Hundred dollars and Zero Cents ($46,210.00). *See* a true and accurate copy of such correspondence attached hereto as Exhibit D.

54.     THE MICLEAS timely notified CHASE of the billing error on the CARD, per 15 U.S.C.A. §1666(a). *See* 15 U.S.C.A. § 1666 (a).

55.     On or about October 12, 2006, THE MICLEAS submitted a second dispute relating to the Forty-Six Thousand Two Hundred dollars and Zero Cents ($46,210.00). *See* a true and accurate copy of such correspondence attached hereto as Exhibit E.

56.     On March 2, 2007, over five months after the initial dispute claim forwarded by THE MICLEAS to CHASE, CHASE determining that the Forty-Six Thousand Two Hundred dollars and Zero Cents ($46,210.00) charge is valid. *See* a true and accurate copy of such correspondence attached hereto as Exhibit F.

57.     CHASE had an obligation to respond to THE MICLEAS dispute within most 90 days from the notice of dispute. *See* 15 U.S.C.A. § 1666(a)(3)(B).

58.     CHASE failed to comply with said requirement given that it addressed THE MICLEAS dispute after 5 months of the original notice of dispute.

59.     Per 15 U.S.C.A. § 1666(e), CHASE forfeited any and all rights to collect from THE MICLEAS the sum of Forty-Six Thousand Two Hundred Dollars and Zero Cents ($46,210.00). *See* 15 U.S.C.A. § 1666(e).

WHEREAS, Plaintiffs, SORIN PAUL MICLEA and ANCA MICLEA a/k/a ANCA MOLDOVAN, hereby requests that this Court enter an order requiring CHASE BANK USA, N.A. and VISA, INC. to:

(A)     Reverse the charge of Forty-Six Thousand Two Hundred Dollars and Zero Cents ($46,210.00) to the CARD;

(B)     Communicate with all credit reporting agencies to remove any and all derogatory statements relating to the CARD on THE MICLEAS credit reports;

(C)     Reimburse any and expenses incurred by THE MICLEAS relating to the CARD, including but not limited to finance charges, over the limit fees, late fees, fees, costs and attorney's fees relating to the excess charge by CHASE BANK USA, N.A. and VISA, INC. to THE MICLEAS CARD;

(D)     Pay THE MICLEAS actual damages per 15 U.S.C.A. § 1640, including actual damages, punitive damages, consequential damages, attorney's fees, and costs;

(E)     Any other relief that this Court sees fit.


**VII.    COUNT III - BREACH OF CONTRACT AGAINST WYNDHAM.**

1-59.    THE MICLEAS re-allege and incorporate hereto paragraphs 1-59 Count II as paragraphs 1-59, as fully set forth herein.

60.    WYNDHAM breached the terms of the AUTHORIZATION agreement.

61.    As a direct and proximate result of WYNDHAM's charge to THE MICLEAS personal CARD, THE MICLEAS suffered damages, including but not limited to, as follows:  (a) adverse reporting to the credit bureaus negatively affecting the MICLEAS credit scores; (b) a balance in an excess of Sixty-Five Thousand Dollars and Zero Cents ($65,000.00), which the MICLEAS did not voluntarily incur, nor authorized CHASE and/or VISA to permit to incur; (c)

incur an increase in interest rate as a result of the excessive limit on the CARD; (d) charges and fines relating to the outstanding balance on the CARD; (e) minimum payment in excess of Forty-Four Thousand Dollars and Zero Cents ($44,000.00) per month.

WHEREAS, Plaintiffs, SORIN PAUL MICLEA AND ANCA MIDLEA a/k/a ANCA MOLDOVAN hereby requests that this Court enter an order against WYNDHAM as follows:

A.    Reverse of the charge of Forty-Six Thousand Two Hundred Dollars and Zero Cents ($46,210.00) to the CARD on or about July 21, 2006 by WYNDHAM, was without knowledge and or authorization from SORIN PAUL MICLEA an ANCA MICLEA a/k/a ANCA MOLDOVAN;

B.    Any other relief that this Court see fit.

## VIII.  COUNT IV - BREACH OF 815 ILCS 145 ET AL – CREDIT CARD LIALBITY ACT AGAINST CHASE AND VISA.

1-61.    THE MICLEAS re-allege and incorporate hereto paragraphs 1-61 Count III, as paragraph 1-61 as fully set forth herein.

62.    THE MICLEAS did not authorize CHASE to bill the amount of Forty-Six Thousand Two Hundred Dollars and Zero Cents ($46,210.00).

63.    THE MICLEAS did not derive a benefit from the Forty-Six Thousand Two Hundred Dollars and Zero Cents ($46,210.00).

64.    As such, THE MICLEAS are not liable for any amounts "owing by [the] use of that card from which he or a member of his family derived no benefit." *See* 815 ILCS 145/1(a).

WHEREAS, Plaintiffs, SORIN PAUL MICLEA and ANCA MICLEA a/k/a ANCA MOLDOVAN hereby requests that this Court enter an order against WYNDHAM, CHASE and VISA as follows:

    A.    Reverse the charge of Forty-Six Thousand Two Hundred Dollars and Zero

Cents ($46,210.00) to the CARD on or about July 21, 2006 by

WYNDHAM, was made without knowledge and or authorization from

SORIN PAUL MICLEA and ANCA MICLEA a/k/a ANCA MODOVAN;

    B.    Payment of attorney's fees and costs;

    C.    Any other relief that this Court sees fit.


## JURY TRIAL DEMAND

65.    PLAINTIFFS hereby request a trial by jury on all of its legal claims.

Respectfully Submitted:

By: /s/ Ioana Salajanu
    One of their attorneys

Ioana Salajanu, Esq.
The Law Offices of Ioana Salajanu
101 N Wacker Dr., Suite 101
Chicago, IL 60606
Phone: (312) 377-5750
Fax:    (312) 263-5759
ARDC #6272981

Donald N. Wilson, Esq.
Murray, Jensen & Wilson
101 N Wacker Dr., Suite 101
Chicago, IL 60606
Phone:  (312) 263-5432
Fax:    (312) 263-5759
ARDC #6206000

Exhibit A

Retracted



Retracted



Exhibit B

# WYNDHAM CHICAGO
# HOTEL GROUP EVENT AGREEMENT

| | |
|---|---|
| Group Name: | Universal Soccer Association, Corp ("Group") |
| Event Name: | Romanian National Soccer Team |
| Contact Name: | Alexandra Ferucci |
| Address: | 1604 W. Monroe Street |
| | Chicago, IL 60612 |
| Telephone Number: | 310-409-9069 |
| Hotel Contact: | Tara Torok |
| Telephone Number: | 312-274-4438 |
| Fax Number: | 312-274-4442 |
| E-Mail Address: | ttorok@wyndham.com |

**DATES OF MEETING: Wednesday, May 24, 2006 - Monday, May 29, 2006**

## DATE AVAILABILITY

Hotel will hold these dates for Group until Tuesday, April 18, 2006, , at which time Hotel will need a signed copy of this Agreement. If confirmation has not been received by this date, Wyndham Chicago, as manager of the Wyndham Chicago ("Hotel") reserves the right to release these dates for sale without notice to you. In the event Hotel has a definite request for Group's dates prior to the above option date, Hotel will contact Group for a decision within 48 hours (2 working days).

## GUEST ROOM ACCOMMODATIONS

You have contracted the following block of rooms:

| | Wed 05/24 | Thu 05/25 | Fri 05/26 | Sat 05/27 |
|---|---|---|---|---|
| Deluxe Guestrooms | 35 | 35 | 35 | 35 |

Total Group Room Nights: <u>140</u> ("Room Block")

## GUEST ROOM RATES

The Hotel is pleased to confirm the following special rates for your meeting:

| Room | Single Rate | Double Rate |
|---|---|---|
| Deluxe Guestrooms | 150.00 | 150.00 |

*The above quoted room rates are inclusive to tax.

| | | |
|---|---|---|
| Deluxe Suite (Massage room) | 150.00 | |

The guestroom rates quoted above are net and non-commissionable.

**CHECK-IN TIME IS <u>4:00 PM.</u>  CHECKOUT TIME IS <u>11:00 AM</u>.**

1

## ROOM BLOCK ATTRITION

This Agreement is based in part on Group's use of the entire Room Block. However, upon receipt of your written notice the following reductions in your Room Block will be allowed without any liquidated payment:

| More than 30 days prior to arrival | 5% of Original Room Block |
| Less than 30 days prior to arrival | 5% of Original Room Block |

Should your actual Room Block pick-up fall short of the allowed reductions set forth above, Group shall pay the Hotel the average room rate set forth in this Agreement, plus any applicable taxes, resort or other Hotel imposed fees, per day, for each room below the allowed reduction that is not utilized by Group. These sums are not a penalty and represent a reasonable effort on behalf of the Hotel to establish its loss prospectively and represent liquidated damages.

## RESERVATION PROCEDURES:

**Rooming List:**
You shall submit a rooming list to our Sales Department at fax number 312-274-4442 by <u>Monday, April 24, 2006</u> including the name and address of attendees, the arrival and departure dates, and if available, the times of arrival and departure. We understand that <u>Group is responsible for room charges and tax (included in room rate) only</u> <u>and attendees are responsible for their own incidental charges.</u>

**Other Reservation Terms: (Guest will only be charged for the evening of the day they depart prior to their scheduled departure)**
The Hotel will require an early departure charge in an amount equal to the guest's current per night charge plus applicable taxes(included in room rate) (excluding occupancy tax) for all guests who depart one or more days prior to their scheduled departure date verified upon arrival.

All rooms included in the Room Block require a one-night's deposit/guarantee by guest check, money order or valid credit card by the Reservation Cut-Off Date. Individual Guest cancellation will be accepted up to seventy-two (72) hours prior to arrival; however, Group's Room Block and attrition obligations shall not be modified. The deposit is refundable if timely notice of cancellation is given and a cancellation number obtained.

In the event that a room is not available for a guest holding a guaranteed room reservation, the Hotel will pay for one night's lodging (room and tax) at a comparable alternate property (near original hotel), transportation to and from such property, and one long distance phone call. The Hotel will also list the guest's name with the Hotel switchboard, in order to facilitate the transfer of the guest's phone calls to the alternate property. Every effort will be made to bring the guest back after one night at the alternate property.

## RESERVATIONS CUT-OFF DATE

We have established a cut-off date of 12:01 a.m. on Monday, April 24, 2006 ("Reservation Cut-Off Date") for guestroom accommodations. Only those Group rooms reserved with guest name and guaranteed as of the Reservation Cut-Off Date will be considered reserved Group rooms as part of this Agreement, and Group shall remain responsible for payment of the remainder of the Room Block, less any allowed attrition. Any Group reservations and substitution requests received after the Reservation Cut-Off Date shall be handled on a space available basis. Should the Hotel determine that all or part of Group's Room Block that is not confirmed as of the Reservation Cut-Off Date is available for resell, the Hotel will attempt to sell the unused portion of the Room Block. If a Group room is resold over the date of your event, Group's attrition charges shall be reduced by the room rate received on each Group room sold, up to the rate for said room set forth in this Agreement, in

2

accordance with the Room Block Attrition paragraphs above. For the purposes of this paragraph, the Parties agree that all other available Hotel inventory shall be sold prior to any of the unused Group's Room Block.

## PAYMENT PROCEDURE

We understand that the individual's room, tax, and group function room related charges are to be placed on individual folios and invoiced to one address. The attendees will be responsible for their own incidental expenses at time of check out.
*Prepayment of $19,050.00 is due upon signature of contract.

## MEETING OR BANQUET FACILITIES

It is our understanding that you have made arrangements at the Hotel for meeting and/or banquet facilities. The details and terms of any such arrangements are contained in a separate Banquet Event Order, the terms and conditions of which are incorporated herein by reference. Function room names identified herein are solely for the purpose of example. In addition to any other charges, the Hotel's standard service charge (**which consists of 17.20% gratuity, 4.80% service charge**) currently 22 percent, shall apply to all food and beverage charges, audio visual, meeting room - exhibit space rental.

Currently, the Hotel is holding the meeting space as described below as part of this Agreement based upon the information you provided. Any revisions and/or changes will be accommodated based on the availability of meeting space at the time requested. Additional meeting space may be subject to meeting room rental. Please advise us immediately of any additional needs. Function rooms are assigned according to the number of persons expected to attend and may be changed by the Hotel if attendance or other circumstances change. In such event, the Hotel will provide alternate suitable arrangements to meet the requirements of your Group as outlined in this Agreement. You must coordinate with our Convention Manager prior to publishing any meeting room names.

## PROGRAM AGENDA

Universal Soccer Association
Romanian National Soccer Team

| Date | Start Time | End Time | Function | Setup | Att. | Room Rental |
|---|---|---|---|---|---|---|
| 5/24/2006 | 6:00 PM | 8:00 PM | Dinner Buffet | Rounds | 40 | 150.00 |
| 5/25/2006 | 12:00 AM | 11:59 PM | | Rounds | 40 | 200.00 |
| 5/25/2006 | 7:00 AM | 9:00 AM | Breakfast Buffet | Rounds | 40 | |
| 5/25/2006 | 12:00 PM | 1:00 PM | Lunch Buffet | Rounds | 40 | |
| 5/25/2006 | 6:00 PM | 8:00 PM | Dinner Buffet | Rounds | 40 | |
| 5/26/2006 | 12:00 AM | 11:59 PM | | Rounds | 40 | 200.00 |
| 5/26/2006 | 7:00 AM | 9:00 AM | Breakfast Buffet | Rounds | 40 | |
| 5/26/2006 | 12:00 PM | 1:00 PM | Lunch Buffet | Rounds | 40 | |
| 5/26/2006 | 3:00 PM | 4:00 PM | Break | Rounds | 40 | |
| 5/26/2006 | 6:00 PM | 8:00 PM | Dinner Buffet | Rounds | 40 | |
| 5/27/2006 | 12:00 AM | 11:59 PM | | Rounds | 40 | 200.00 |
| 5/27/2006 | 7:00 AM | 9:00 AM | Breakfast Buffet | Rounds | 40 | |
| 5/27/2006 | 12:00 PM | 1:00 PM | Lunch Buffet | Rounds | 40 | |
| 5/27/2006 | 6:00 PM | 8:00 PM | Dinner Buffet | Rounds | 40 | |
| 5/28/2006 | 7:00 AM | 9:00 AM | Breakfast Buffet | Rounds | 40 | 200.00 |
| 5/28/2006 | 12:00 PM | 1:00 PM | Lunch Buffet | Rounds | 40 | |

It has been determined that room rental charges for the entire program total $950.00. In addition, a $10,500.00 food and beverage minimum (not including tax and service charge) has been set for the entire program. If the minimum is not met, the balance will be assessed to your Master Account as a Cxl/Attrition Fee. This F&B Minimum and Room Rental Charge does not include service charges, tax, labor charges, audio visual, parking, or any other miscellaneous charges incurred.

If the Group chooses to retain vendors, other than the Hotel's preferred in-house vendors, to provide services and/or any equipment for the Group's event at the Hotel, the Group acknowledges and agrees that any damage to the Hotel, to the Group, or to the outside vendor's employees, equipment or property, or to any guest or third party caused in whole or in part by the outside vendor, is the sole responsibility of the Group and the outside vendor. Not later than thirty (30) days prior to your event, all non-preferred outside vendors are required to (1) execute agreements to indemnify, defend and hold the Hotel harmless from any act or omission committed by the vendor while the vendor is on Hotel property; and (2) provide proof of insurance, with a carrier and with limits acceptable to the Hotel, and identify the Hotel as an additional named insured on said insurance policy.

## SECURITY
Your organization acknowledges that the Hotel cannot be responsible for the safe keeping of equipment, supplies, written material or other valuable items left in the function rooms. Accordingly, you agree that it will be your responsibility to provide security of any such aforementioned items and hereby assume the responsibility for loss thereof. You shall give notice of this policy to all your exhibitors/attendees. You will furnish the Hotel with evidence of liability insurance upon request. You shall name the Hotel, its owner and management company as additional insureds if the Hotel makes such a request. Group agrees to comply with all federal anti-terrorism rules and regulations. Hotel and Group agree to fully cooperate with each other and with governmental authorities to ensure compliance with such laws.

## FORCE MAJEURE
The performance of this Agreement by either party is subject to acts of God, war, government regulations, disaster, strikes, civil disorder, terrorism, complete curtailment of transportation, or other emergencies making it illegal or impossible to substantially perform this Agreement. In such an event, prompt notice shall be given by the party canceling pursuant to this section. For the purpose of this section, terrorism is defined as acts of persons acting on behalf of or in connection with any organization which carries out activities, which are intended to cause serious bodily injury, within the United States directed toward the overthrowing or intimidating of the United States government by violence or other force. War is that which is declared by Congress.

## GOVERNING LAW/VENUE
This Agreement is governed by and any suit or action arising out of or relating to this Agreement shall be brought in the State of Illinois. The Parties agree that venue shall be in Chicago, Illinois and Group hereby waives any and all objections to jurisdiction or venue.

## AMERICANS WITH DISABILITIES ACT
The Hotel wishes to make its facilities reasonably accessible by persons with disabilities as required by Title III (Public Accommodations and Services Operated by Private Entities) of the Americans With Disabilities Act. As soon as practical, the Group will need to determine if any participant of the Group has a special need. The Group will provide the Hotel in writing at least thirty (30) days prior to arrival of determined special needs. The Group will be responsible for making all auxiliary aids and services available to participants who indicate they have a special need for their participation in the Group's functions, except for those reasonably provided by the Hotel. The Group shall pay for any extraordinary costs, determined by the Hotel, for such auxiliary aids unless otherwise agreed upon by both the Group and the Hotel.

## WYNDHAM AND HOTEL NAME AND LOGO
The names and logos of the Hotel and of Wyndham are exclusive property of the Hotel and its subsidiaries and affiliates, respectively. Any unauthorized use of these names and logos is prohibited. You must submit any and

all materials that include the name of the Hotel to the Hotel and obtain written authorization before same are reproduced. The Director of Sales must be copied on all mailings that include the name of the Hotel. Any use of the names and/or logos without written approval must be reprinted and mailed at Group's expense.

## INDEMNITY

Each party shall indemnify, defend and hold harmless the other party, its directors, officers, employees, agents, members, parents, partners, general partners, successors, predecessors, and affiliates from and against any and all actions, causes of action, claims, demands, liabilities, losses, judgments, damages or expenses and charges of any kind or nature including interest, reasonable attorney's fees and other costs, expenses and charges which the other may at any time incur or become subject to by reason of any claim or claims:

    a.    arising out of the indemnifying party's breach of any provision, warranty or representation of this Agreement;

    b.    arising out of the indemnifying party's willful acts or omissions, negligence, or other similar wrongdoing; or

    c.    arising from the indemnifying party's failure to comply with any law or regulation, unless caused by the other.

The terms of this Section shall survive the expiration or termination of this Agreement. For the purpose of this Indemnity, the parties agree that the Hotel parties indemnified include the following: Wyndham Chicago and Columbia Sussex Corporation. Group agrees that the acts and omissions of its contractors, subcontractors, employees, agents and vendors on Hotel premises constitute Group's acts or omissions for the purpose of this indemnity.

## PYROTECHNICS & PROHIBITED ACTIVITIES AND SUBSTANCES

Group covenants and agrees that Group is strictly prohibited from engaging in any activity or activities on the Hotel property or possessing or bringing any materials or items to the Hotel and the Hotel property which involve or contain, or constitute, directly or indirectly: (i) any form or type of pyrotechnics, fireworks, flares, flames, or other flammable or explosive materials or items, or (ii) any Hazardous Substances. The term "Hazardous Substances" includes, but is not limited to, any and all substances (whether solid, liquid or gas): (i) defined, listed or otherwise classified as pollutants, hazardous wastes, or words of similar meaning or regulatory effect under any present or future Laws, including, but not limited to, petroleum and petroleum products, asbestos and asbestos-containing materials, polychlorinated biphenyls, lead, radon, radioactive materials, flammables and explosives. The term "Laws" includes, without limitation, all stated and federal environmental laws and regulations, the Homeland Security Act, the Safe Explosive Act, and any other past, present and future federal, state and local laws, statutes, ordinances, rules, regulations and the like, as well as common law, relating to the protection of human health or the environment, or relating to Hazardous Substances, or relating to the liability for or costs of remediation, or prevention of releases of Hazardous Substances, or relating to liability or costs of actual or threatened danger to human health or the environment. Group covenants and agrees that Group: (a) shall strictly comply with all laws, orders, rules and regulations relating to the use and occupancy of the Hotel property, (b) will not permit the Hotel property to be used for any improper, unlawful or objectionable purposes and (c) will not cause, maintain or permit any nuisance in, on or about the Hotel property.

## OTHER TERMS

Group agrees to abide by all city, state and federal rules and regulations related to smoking on the Hotel property, to apprise its members and attendees of such laws, and to fully comply with said regulations and requirements.

## AUTHORIZED SIGNATURES

In the event this Agreement is executed by a third party on behalf of a client/Group, the attached Joinder and Consent to Agreement must be executed by the client. If such Joinder is not received by the Hotel within thirty (30) days after the date the Hotel receives an executed copy of this Agreement from Group, the Hotel shall have the option to terminate this Agreement by giving written notice to you, and all applicable cancellation and related fees shall be paid by you within fifteen (15) days thereafter. Failure of the client/Group to execute the 10 Joinder shall not be considered a waiver of Hotel's right to collect the sums owed from the client/Group that may or has actually utilized the Hotel.

If these arrangements meet with your approval, please sign and return the duplicate to the attention of the Director of Sales. Acceptance will occur upon receipt of an original or a facsimile (fax) transmittal of a fully signed original by the Hotel. If a fax transmittal is used by either party, then the fax copy shall serve as an original until an actual original is executed and received by both parties.

This Agreement constitutes the entire understanding between the parties and supersedes any previous communications, representations, or agreements, whether written or oral.

The undersigned are authorized to agree to the above terms and conditions as outlined, and commit to make this Agreement definite and binding.

The Agreement must be signed by a Group officer, Executive Director, or Director of Meetings by Wednesday, April 12, 2006 and returned by Fax or Mail to Tara Torok, Executive Conference Manager.

Wyndham Chicago
633 North St. Clair Street
Chicago, Illinois 60611
Fax: 312-274-4442

| | Wyndham Chicago its authorized agent |
|---|---|
| | |
| | |
| By: | By: |
| Typed Name: | Typed Name:  Jim Edgar |
| Title: | Director of Sales |
| Date: | Date: 4/18/2006 |
| Universal Soccer Association | |
| By: | By: |
| Typed Name: Alexandra Ferucci, | Typed Name: Tara Torok, Executive Conference Manager |
| Date: | Date: |

6

# MENU
## Romanian National Team
### North Ireland vs. Romania and Romania vs. Columbia
*CHICAGO*

**WEDNESDAY 24.05.2006**

**Snack 17³⁰:**

$16.5⁰
- Proscutto di Parma,
- Croissant, honey, coffee, cappuccino, tea.
- Still mineral water.

*** For the training sessions: still mineral water and bananas.**

**Dinner (Buffet) 21³⁰:**
- Selection of cheese (greek, camembert, yellow cheese, ementhal, president).
- Salad (lettuce, cucumber, tomatoes, green pepper), tuna for salads.
- Baked turkey, grilled chicken legs.
$55 
- Parmegiano, tomato sauce.
- Boiled vegetables (potatoes, cauliflower, carrots).
- Spaghetti, rice with mushrooms.
- Fresh fruits (bananas, apples, grapes, pears), fruits cake.
- 2 rolls of bread. Lemon. Olive oil. Yoghurt.
- Orange juice, still mineral water.

*** In the rooms: still mineral water.**

**THURSDAY 25.05.2006**

**Breakfast (Buffet) 9⁰⁰:**

$28
- Tea, butter, jam, ham, rolls, honey, coffee, croissant, ementhal (yellow cheese).

**Lunch (Buffet) 13³⁰:**
- Chicken soup with noodles.
- Grilled chicken legs, beef (sirloin).
$55
- Boiled vegetables (potatoes, cauliflower, carrots).
- Spaghetti, boiled rice, tortellini.
- Parmegiano, ham, tomato sauce.
- Olive oil, lemon.
- Selection of cheese.
45
- Salad (tomatoes, green pepper, lettuce). Tuna for salads.
- Chocholate cake, fresh fruits (apples, bananas, oranges, grapes).
- Rolls.
- Orange juice, apple juice, still mineral water.

**THURSDAY 25.05.2006**
**Dinner (Buffet) 20ᵒᵒ:**

- Grilled chicken legs, beef and fish.
- Boiled vegetables (potatoes, cauliflower, carrots).
- Spaghetti, tagliatelle, boiled rice.
- Parmegiano, ham, tomato sauce.
- Olive oil, lemon.
- Selection of cheese.
- Salad (tomatoes, green pepper, lettuce, cucumber). Tuna.
- Fruits cake, fresh fruits (apples, bananas, oranges, grapes).
- Rolls. Yoghurt.
- Orange juice, apple juice, still mineral water.

$65.00

55

*** For the training session and in the rooms: still mineral water.*

**FRIDAY 26.05.2006      . MATCH DAY (Romania vs. North Ireland) 20ᵒᵒ**

**Breakfast (Buffet) 9ᵒᵒ:**
Buffet only: tea, butter, jam, bacon, rolls, honey, coffee, croissant, Ementhal (yellow cheese)

$8

**Lunch 13ᵒᵒ:**

- Beef consomme
- Grilled chicken breast + spaghetti + tomato juice
- Sliced ham, parmegiano
- Bar of milk chocolate 100gr.
- Still mineral water

$35

**Snack 17ᵒᵒ:**
Butter cookies (Danish), coffee, tea, croissant, still mineral water.

$16.50

*** To stadium: 2 bananas /person*

**Dinner (Buffet) – after game 23ᵒᵒ:**

- Grilled chicken legs, beef, baked turkey.
- Boiled vegetables (potatoes, cauliflower, carrots).
- Spaghetti, tagliatelle, boiled rice, ravioli.
- Parmegiano, ham, tomato sauce.
- Olive oil, lemon.
- Selection of cheese.
- Salad (tomatoes, green pepper, lettuce). Tuna.
- Fruits cake, fresh fruits (apples, bananas, oranges, grapes).
- Rolls. Yoghurt.
- Orange juice, apple juice, still mineral water.

$65

*** In the rooms: still mineral water.*

## SATURDAY 27.05.2006 - MATCH DAY (Romania vs. Columbia) 16⁰⁰

**Breakfast (Buffet) 9⁰⁰:**
Buffet only: tea, butter, jam, ham, rolls, honey, coffee, croissant, Ementhal (yellow cheese)

**$28**

**Lunch 12⁰⁰:**
- Grilled chicken breast + spaghetti + tomato juice
- Sliced ham, parmegiano
- Bar of milk chocolate 100gr.
- Still mineral water

**$30**

** To stadium: 2 bananas / person

**Dinner (Buffet) – after game 20⁰⁰:**
- Grilled chicken legs, beef.
- Boiled vegetables (potatoes, cauliflower, carrots).
- Spaghetti, tagliatelle, boiled rice.
- Parmegiano, ham, tomato sauce, Bolognaise sauce.
- Olive oil, lemon.
- Selection of cheese.
- Salad (tomatoes, green pepper, lettuce, cucumber). Tuna.
- Fruits cake, fresh fruits (apples, bananas, oranges, grapes, pears).
- Rolls. Yoghurt.
- Orange juice, apple juice, still mineral water.

**$55**

** In the rooms: still mineral water.

**SUNDAY 28.05.2006**

### Breakfast (Swedish Buffet) 9ºº

### Lunch (Buffet) 13ºº:

- Chicken soup with noodles.
- Grilled chicken legs, beef (sirloin).
- Boiled vegetables (potatoes, cauliflower, carrots).
- Spaghetti, tagliatelle, boiled rice.
- Parmigiano, ham, tomato sauce, Bolognaise sauce.
- Olive oil, lemon.
- Selection of cheese.
- Salad (tomatoes, green pepper, lettuce, cucumber). Tuna for salads.
- Fruits cake, fresh fruits (apples, bananas, oranges, grapes).
- Rolls.
- Orange juice, apple juice, still mineral water.

$55

45.

### Dinner (Buffet) 20ºº:

- Grilled chicken legs, beef and fish.
- Boiled vegetables (tomatoes, cauliflower, carrots).
- Spaghetti, tagliatelle, boiled rice.
- Parmigiano, ham, tomato sauce, Bolognaise sauce.
- Olive oil, lemon.
- Selection of cheese.
- Salad (tomatoes, green pepper, lettuce, cucumber). Tuna.
- Fruits cake, fresh fruits (apples, bananas, oranges, grapes).
- Rolls, Yoghurt.
- Orange juice, apple juice, still mineral water.

$65

** in the rooms: still mineral water.

**MONDAY 29.05.2006**

### Breakfast (Swedish Buffet) 9ºº

### Lunch (Buffet) 13ºº:

- Minestrone soup.
- Grilled chicken legs, beef (sirloin).
- Boiled vegetables (potatoes, cauliflower, carrots).
- Spaghetti, tagliatelle, boiled rice.
- Parmigiano, ham, tomato sauce, Bolognaise sauce.
- Olive oil, lemon.
- Selection of cheese.
- Salad (tomatoes, green pepper, lettuce, cucumber). Tuna for salads.
- Fruits cake, fresh fruits (apples, bananas, oranges, grapes).
- Rolls.
- Orange juice, apple juice, still mineral water.

$55

Team Physician,
Dr. Pompiliu Popescu

Exhibit C



# WYNDHAM CHICAGO

### Credit Card Authorization Form

Manager _Tara Trvok_   Auth. Amount _80,000_   Date _04/21/06_

Function / Group / Guest's Name _ROMANIAN NATIONAL SOCCER TEAM._

Function / Reservation Date(s) _5/24/06 — 5/28/06_

Charges Authorized (indicate all applicable boxes)

~~Room and Tax~~   ✓        Meeting / Event Charges ___
Room Incidental Charges

Other _____

Name of Credit Card Holder _PAUL SORIN MICLEA_

Cardholder Address _6830 N Kedvale Ave._

_Lincolnwood, IL 60712_

Type of Credit Card _VISA_

Credit Card Number _4388 - 5760 - 1215 - 0846_   Exp. Date: _01/07._

## * * PLEASE SEND A LEGIBLE PHOTOCOPY OF THE FRONT AND BACK OF YOUR CREDIT CARD ALONG WITH THIS AUTHORIZATION FORM **

*The undersigned hereby authorizes all charges indicated above, and as indicated on the executed contract and / or Catering Event Orders, for the referenced Function / Group / Guest to be guaranteed for payment to this credit card. "Guaranteed for payment" is defined as in the event an alternate method of payment is not presented at the conclusion of the event, all charges are to be processed to this credit card to satisfy their obligation to the Wyndham Chicago Hotel. Additionally, any outstanding balances left unpaid after payment of the final bill, including no-show, attrition, and cancellation charges will be applied to this credit card, regardless of if the outstanding balance exceeds the authorized amount above.*

Card Holder Signature _____

Exhibit D

To: Merchant Dispute

Fax: 888-643-9624
Pages # 40

From: Sorin Paul Miclea
Date Sent:9/27/06
Ac # 4388-5760-2070-3172
Phone # 773-968-7280
Fax # 847- 673-0161

**Message:**

I am disputing the following charges made on my old card # 4388 5760 1215 0846. My new account # 4388 5760 2070 3172

7/21/06 Wyndham $ 5,000.00
7/21/06 Wyndham $15,000.00
7/21/06 Wyndham $24,210.99
7/21/06 Wyndham $2,000.00

The reason why I am disputing these charges is that Wyndham supposed to charge my card only $19,050.00 which was the deposit amount on the contract that the company that I worked for signed with Wyndham .This amount was charged on 4/22/06 and it was authorized by me.
Since my credit card limit is $22,000.00 and I am not allowed to do charges over that limit , how is it possible that somebody can charge$ 46,000.00 over my credit limit? This is a question where I still don't have an answer from people I talked to in customer service department. Some of these people including supervisors told me that charging over credit card limit is not possible but on the other hand others said that in very seldom situation these things may happened, but they couldn't tell me why I am in situation to be charged over my credit limit.

The reason why the company I worked for didn't paid the balance is because the final invoice they got from Wyndham was not calculated according with the contract and with agreement they have with the hotel.
The final balance is about $14,000.00 more that it should be for food and beverage which represents extra charges not approved by my company, the hotel did not honor the rates negotiated in the contract, the hotel charged all the expenses based on  45 people  instead of 40 people as we signed in contract, the hotel have made charges  for food and beverage three days after our group(40 people from 24 may to 29 may , 2006 ) left the hotel. The final invoice also includes $1,950.00 over charged for the rooms. ( 9 rooms were checked out on may 28,2006).

We have tried to scheduled appointments with the hotel in order to solve all these issues., but with the reason that the person who negotiated the contract with us is no longer working for the hotel we were not able to have any meeting with Wyndham. The hotel keep telling us that we will be contacted by a person in charged but as of today nobody is returning our call. In order to prove all these things I will attached copy of the contract and the final invoice.
Considering all the above  I want to mention if you will honor the full payment to Wyndham me and the company I worked for we will not be able to negotiated all these extra charges.

I request a fast decision in this case due to the fact that being your customer I am not able to use my credit card and also I don't feel comfortable to pay my outstanding balance which  is about $20,000.00 as long as I don't have any guarantee that other charges will be made on my account by Wyndham.


Sincerely,


Sorin Paul Miclea

Exhibit E

To: Kim Love
Merchant Dispute

Fax: 614-776-7663
Pages # 40
RE: Case # 70420586 / 68058340

From: Sorin Paul Miclea
Date Sent:9/27/06, 10/04/06
Ac # 4388-5760-2070-3172
Phone # 773-968-7280
Fax # 847- 673-0161

Message:

I am disputing the following charges made on my old card # 4388 5760 1215 0846. My new account # 4388 5760 2070 3172

7/21/06 Wyndham $ 5,000.00
7/21/06 Wyndham $15,000.00
7/21/06 Wyndham $24,210.99
7/21/06 Wyndham $2,000.00

The reason why I am disputing these charges is that Wyndham supposed to charge my card only $19,050.00 which was the deposit amount on the contract that the company that I worked for  signed with Wyndham .This amount was charged on 4/22/06 and it was authorized by me.
Since my credit card limit is $22,000.00 and I am not allowed to do charges over that limit , how is it possible that somebody can charge$ 46,000.00 over my credit limit? This is a question where I still don't have an answer  from people I talked to in customer service department. Some of these people including supervisors told me that charging over credit card limit is not possible but on the other hand others said that in very seldom situation these things may happened, but they couldn't tell me why I am in situation to be charged over my credit limit.

The reason why the company I worked for didn't paid the balance is because the final invoice they got from Wyndham was not calculated according with the contract and with agreement they have with the hotel.
The final balance is about $14,000.00 more that it should be for food and beverage which represents extra charges not approved by my company, the hotel did not honor the rates negotiated in the contract, the hotel charged all the expenses based on  45 people  instead of 40 people as we signed in contract, the hotel have made charges  for food and beverage three days after our group(40 people from 24 may to 29 may , 2006 ) left the hotel. The final invoice also includes $1,950.00 over charged for the rooms. ( 9 rooms were checked out on may 28,2006).

We have tried to scheduled appointments with the hotel in order to solve all these issues., but with the reason that the person who negotiated the contract with us is no longer working for the hotel we were not able to have any meeting with Wyndham. The hotel keep telling us that we will be contacted by a person in charged but as of today nobody is returning our call. In order to prove all these things I will attached copy of the contract and the final invoice.
Considering all the above  I want to mention if you will honor the full payment to Wyndham me and the company I worked for we will not be able to negotiated all these extra charges.

I request a fast decision in this case due to the fact that being your customer I am not able to use my credit card and also I don't feel comfortable to pay my outstanding balance which  is about $20,000.00 as long as I don't have any guarantee that other charges will be made on my account by Wyndham.


Sincerely,


Sorin Paul Miclea

Exhibit F

# CHASE ⬡

March 2,2007

Dear Mr. Sorin Paul Miclea

Ref Account: 4388-5760-1215-0846

We are writing concerning the ongoing credit card disputes with Wyndham Chicago:

| Transaction Date | Amount | Merchant |
|---|---|---|
| 7/21/2006 | $24,210.99 | Wyndham Chicago |
| 7/21/2006 | $15,000.00 | Wyndham Chicago |
| 7/21/2006 | $5000.00 | Wyndham Chicago |
| 7/21/2006 | $2000.00 | Wyndham Chicago |

As of March 2, 2006 we have completed a reasonable investigation and find that these charges are valid. We contacted the merchant on October 13,2006 to try to obtain a reasonable solution to your dispute. Unforutnaually the merchant is unwilling to issue credit to your account. Additionally, contacted the merchant again on the following dates, October 19, 2006, November 7, 2006 and November 15, 2006 to work toward a favorable outcome.

The merchant has provided signed documentation agreeing to all charges indicated and provided a front and back copy of the credit card. We have provided a copy of a signed Credit Card Authorization form. This from does indicate by the signed agreement that this credit card was used as a guaranteed of payment

Because we recognize a Cardmember may be in an emergency situation. Chase may authorize a transaction that would cause your account balance to exceed the assigned credit limit. It is the Cardmembers responsibility to monitor their account balance. It is important to note that situations may still arise that can cause your account balance to exceed its limit. We regret that we are unable to prevent these following situations from occurring:

* Fees and finance charges.
* A previously authorized and recurring transaction

The authorization form that was signed also states that any outstanding balance left unpaid after payment of the final bill including no show, attrition and cancellation charges will be applied to this credit card, regardless of the outstanding balance exceeds the authorized amount above.

Be advised that as of today's date March 2, 2007 we are unable to proceed with your dispute. The disputed charges will be included in the balance on your next statement and normal payment terms will apply.

If you have any additional questions, or if we can help in any other way, please call me directly. Serving you is very important to us here at Chase Card Services, and we appreciate your business.

Sincerely,

Lisa Graye
Case Manager
614-776-7204